IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**RUSSELL HINSLEY**                                                                          **PLAINTIFF**

v.                            **CASE NO. 2:24-CV-00187-BSM**

**CITY OF CLARENDON**                                                          **DEFENDANT**

## ORDER

Defendant's motion for summary judgment [Doc. No. 8] is granted.  This case presents a very interesting question: When does a landowner who knowingly purchases property from a city next to a sewage pumping station have a damages claim against the city for the smell and sewage spills at the pumping station?

### I.  BACKGROUND

Russell Hinsley purchased land with a building from the City of Clarendon in July 2020 and converted the building for home use.  Pl.'s Resp. Def.'s Statement Undisputed Material Facts, Doc. No. 20 (SUMF)  ¶¶ 3, 5, & 7.  Hinsley states that the deed does not contain all of the property he purchased, but the deed reflects that he purchased "Lot Twelve (12), Block J, Ewans addition to the City of Clarendon, Arkansas, less and except the north thirty (30) feet of said Lot Twelve (12)." *Id.*  ¶ 6.  Hinsley knew that a City-owned sewage pumping station was located just 42 feet away from the building before he bought it. *Id.*  ¶¶ 8 &10.

Two years after Hinsley bought the property, the pumping station malfunctioned and the City installed a temporary pump. *Id*. ¶¶  22–29.  The temporary pump, however, blew

apart and sewage spewed onto the ground and into a workshop on Hinsley's property. *Id.* ¶ 30. City workers stopped the overflow and contained the sewage. *Id.* ¶ 33. The pumping station malfunctioned again in March 2023 and sewage was again pumped onto the ground. SUMF ¶ 36. Sewage overflowed from the pumping station a third time in November 2024, and seeped onto Hinsley's property. *Id.* ¶¶ 77–78.

In addition to dealing with overflowing sewage, Hinsley has had to endure City workers spraying his dog with an unknown chemical; one City worker told Hinsley it was Roundup. *Id.* ¶¶ 45–46. Although his dog is still living, the dog has been treated by a veterinarian on two occasions for health problems that Hinsley believes were caused by the chemical. *Id.* ¶¶ 49–50, 53–55, & 57.

Hinsley is suing the City under 42 U.S.C. section 1983 and the Arkansas Civil Rights Act for violating his Fifth and Fourteenth Amendment Rights, and article 2, section 22 of the Arkansas Constitution for taking his property without just compensation. He is also suing for conversion and outrage. The city is moving for summary judgment on all claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence

demonstrating a genuine factual dispute requiring a trial. *Id*. All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III.  DISCUSSION

The City's motion for summary judgment is granted on all claims. Also, to the extent that Hinsley asserts an adverse possession claim, summary judgment is granted on it because Hinsley did not allege adverse possession in the complaint. *See* Pl.'s Br. Supp. Resp. Def.'s Mot. Summ. J. at 5, Doc. No. 18.

A.      <u>Inverse Condemnation</u>

It appears that Hinsley is bringing an inverse condemnation claim because the City is immune from any negligence claim he may have for the sewage spills. Ark. Code Ann. § 21-9-301(a). Indeed, the City has tort immunity except on claims in which it has insurance, and the City does not have insurance coverage for sewage spills. Dec. Mayor Cunningham ¶ 3. Summary judgment is granted on Hinsley's inverse condemnation claim because the City has not converted Hinsley's property to public use.

The constitutions of the United States and the State of Arkansas require municipalities to pay just compensation to property owners when private property is taken for public use. U.S. Const. amend. V; Ark. Const. art. 2 § 22;  *Arnold v. Kemp*, 813 S.W.2d 770, 774 (Ark. 1991). This is commonly referred to as a "taking." A common taking occurs when a city conscripts privately owned land to build a street, to create a park, or to build a public

building.  In this circumstance, the city must go through a formal legal process called a condemnation, and then pay the landowner a market rate for the land.  A taking can also occur when a municipality's actions essentially destroy or impair the property's usefulness to the landowner.  *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 32 (2012).  When this happens, the landowner is permitted to bring an inverse condemnation claim.  Inverse condemnation is a lawsuit against a municipality to recover the value of property that the municipality takes without going through the condemnation process.  Ark. Code Ann. § 18-15-410; *National By-Prods., Inc. v. City of Little Rock By & Through Little Rock Reg'l Airport Comm'n*, 916 S.W.2d 745, 747 (Ark. 1996).

In an inverse condemnation claim, the foundational question is whether the municipality has converted private property to public use.  *See* U.S. Const. amend. V ("… nor shall private property be taken for public use, without just compensation."); Ark. Const. art. II, § 22 ("[P]rivate property shall not be taken, appropriated, or damaged for public use, without just compensation therefor.").  If the property has not been converted to public use, summary judgment must be granted.  Hinsley asserts that his property has been taken for public use because the sewage spills and stench from the sewage pumping station are essentially rendering his property unusable as a residence.

Although I am very sympathetic to Hinsley's position, Arkansas case law supports the City's position that, as a matter of law,  Hinsley's property has not been converted to public use.  Hinsley relies on *Robinson v. City of Ashdown,* 783 S.W.2d 53 (Ark. 1990), in which the Arkansas Supreme Court held that a city's failure to provide relief for recurring sewage

4

overflows into the plaintiff's home over a nine year period was a taking. The court held this to be a public benefit because the plaintiff's home was used as an overflow dump, and the city did not have to spend the money to prevent the overflow. *Id*. at 56. In response, the City relies on *City of McCrory v. Wilson*, 644 S.W.3d 823, 828 (Ark. Ct. App. 2022), in which the Arkansas Court of Appeals held that four sewage back-ups over a four month period was not a taking. In *Wilson*, three of the overflows were minor and were corrected and the court held that one major overflow was not sufficient to support an inverse condemnation claim. *Id*. The distinction between *Robinson* and *Wilson* appears to be in the impact of the sewage on the ability of the homeowners to use their property, and this is supported by U.S. Supreme Court precedent. *See Pumpelly v. Green Bay & Mississippi Canal Co.*, 80 U.S. 166, 181 (1871) (holding that inadvertent superinduced additions of materials on private property can be considered public use and a taking when they effectively destroy or impair the property's usefulness).

The facts herein more closely resemble *Wilson* than they do *Robinson*. It is undisputed that Hinsley knew the land he was buying from the City was next to a sewage pumping station before he bought it. SUMF ¶ 10. It is also undisputed that the city-owned sewage pump malfunctioned on three distinct occasions over the course of five years. *Id*. ¶¶ 30, 36, & 77. It is also undisputed that, on two occasions, sewage flowed onto Hinsley's property. *Id*. ¶¶ 30 & 78. On the third occasion, sewage flowed onto property that Hinsley claims is his but his deed does not show is his. *Id*. ¶¶ 6 & 37. It is undisputed that after the first occurrence, the City shut down the pumping station. *Id*. ¶ 32. Finally, while it is

undisputed that the City has been awarded a grant to repair the pumping station, SUMF, Ex. 20, Dec. Mayor Cunningham ¶¶ 5–6, Hinsley argues this is inadequate. These facts, when viewed in the light most favorable to Hinsley, do not support his position that the City has so damaged his property as to convert it to public use.

B.      Due Process

Summary judgment is granted on Hinsley's substantive and procedural due process claims.

### 1. Substantive

Summary judgment is granted on Hinsley's substantive due process claim because the record does not support his claim that the City violated his fundamental rights or that the City's behavior shocks the conscience. *Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013) (whether conduct shocks the conscience is a question of law). Hinsley argues that the City employees' intentional spraying of his dog with chemicals on two occasions shocks the conscience. Pl.'s Br. at 13–14. He claims that his dog's quality of life has profoundly deteriorated and she continues to have health issues. *Id.* Even if this is true, this does not rise to the level of brutal and inhumane abuse of official power. *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (To shock the conscience, the government official's conduct must be intended to injure in some way that is unjustifiable by any government interest. For example, intentionally manufacturing false evidence to convict a criminal defendant shocks the conscience); *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (improper reliance on allegations of child abuse that led to interference with

care, custody and management of children did not shock the conscience; and unprofessional, inappropriate, and unacceptable statements made during child abuse investigations did not rise to level of conscience shocking); *Truong v. Hassan*, 829 F.3d 627, 632 (8th Cir. 2016) (to reach the level of constitutional violation the actions must be inspired by malice or sadism).

### 2. Procedural

Summary judgment is granted on Hinsley's procedural due process claim because Hinsley has failed to show that he was deprived of life, liberty, or property without fair process. *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 994 (8th Cir. 2016). Hinsley argues that he has been deprived of his property without due process because the deed he received from the City does not accurately describe the boundaries of the property he purchased and that the City has erected a fence on property that should have been included in the deed. Pl. Br. at 14–15. This, however, is not a due process issue; it is a breach of contract issue.

C.    42 U.S.C. section 1983

Summary judgment is granted on Hinsley's section 1983 claims because there has been no constitutional or statutory violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (absent an underlying constitutional violation municipalities cannot be liable for damages).

D.    Conversion

Summary judgment is granted on Hinsley's conversion claim because the record lacks

evidence that his dog's health issues were caused by the City.  To prove his claim, Hinsley

must prove the City intentionally exercised dominion over his property.  *Integrated Direct*

*Mktg., LLC v. May*, 495 S.W.3d 73, 75 (Ark. 2016).  To prove this, Hinsley argues that the

City intentionally sprayed his dog with chemicals, causing her quality of life to deteriorate

and causing her to have chronic health problems. Pl.'s Br. at 16.   The problem for Hinsley

is that he has not shown that the City dispossessed him of his property and he has cited no

precedent suggesting that the City exercised dominion over his dog by causing the health

problems.  Moreover, the documents provided by Hinsley's veterinarian do not show that his

dog's health problems were caused by chemicals.  *See Savage v. Union Pac. R. Co.*, 67 F.

Supp. 2d 1021 (E.D. Ark. 1999) (". . .connection between exposure to a certain chemical and

an alleged injury requires specialized expert knowledge and testimony since such matters are

not within the common knowledge of lay persons.").

     E.    <u>Outrage</u>

Summary judgment is granted on Hinsley's outrage claim because the City workers'

behavior was not beyond all possible bounds of decency so that no reasonable person could

be expected to endure it.  *See Schmidt v. Stearman*, 253 S.W.3d 35 (Ark. Ct. App. 2007)

(affirming a directed verdict on outrage where defendant shot plaintiff's dog and there was

no showing of such severe emotional distress no reasonable person should have to endure it).

It is sad that Hinsley's dog is suffering from poor health.  Even if his dog was actually

sprayed by City workers, and that caused his dog's poor health, it is not enough to meet the

very stringent outrage standard.  *Id.*

## IV. CONCLUSION

For these reasons the City's motion for summary judgment is granted and his claims are dismissed with prejudice.

IT IS SO ORDERED this 18th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE